## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| **CARON ADAMS**, | **4:15-CV-11685-TGB-MKM** |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF NOS. 1, 13);** |
| vs. | **DENYING CERTIFICATE OF APPEALABILITY;** |
| **DWAYNE BURTON**, | **AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS** |
| Respondent. | |

Petitioner Caron Adams, an inmate confined at the Macomb Correctional Facility in New Haven, Michigan, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. After exhausting additional claims in state court, Petitioner filed an amended petition for a writ of habeas corpus on June 11, 2019. ECF No. 13. In his pro se application, Petitioner challenges his convictions for two counts of assault with intent to commit murder; two counts of armed robbery; two counts of carjacking, two counts of resisting and obstructing; carrying a weapon with unlawful intent; and possession of a firearm during the commission of a felony.

The amended petition raises five claims for relief. Respondent argues that three claims are procedurally defaulted, and all claims are otherwise meritless. For the reasons set forth, the petition is **DENIED**.

The Court also **DENIES** issuance of a certificate of appealability and **GRANTS** leave to proceed in forma pauperis on appeal.

## I.    BACKGROUND

Petitioner was charged in Wayne County Circuit Court with two counts of assault with intent to commit murder; two counts of armed robbery; two counts of carjacking, two counts of resisting and obstructing; carrying a weapon with unlawful intent; and possession of a firearm during the commission of a felony. ECF No. 1, PageID.17.

On December 4, 2013, Petitioner pleaded no contest to all charges. *Id.* To establish the factual basis for Petitioner's plea, the trial court accepted by reference the preliminary examination testimony of five witnesses.[1] Plea Hearing Tr. (Dec. 4, 2013), ECF No. 8-7, PageID.277. The prosecutor further summarized the factual basis for Petitioner's plea by detailing that in the early morning hours of June 22, 2013, Petitioner and another unnamed individual were armed as they approached Raymond Justice, a man sitting in a Lincoln MKX rental car that was stopped outside of a fast-food restaurant in Detroit. *Id.* at PageID.278;

---

[1] At the preliminary examination hearing, two victims of the carjackings (Raymond Justice and Laquanda Bradley) and two police officers who were involved in a gunfight with Petitioner shortly after the carjackings (William Carter and Maurice Pettigrew) provided testimony. The fifth preliminary examination witness (Brittani Davis) admitted to lying to the police about being a carjacking victim, and her testimony was used as the basis for amending the indictment to reflect that she was not a victim as initially alleged. Prelim. Exam. Hearing Tr. (July 26, 2013), ECF No. 8-2, PageID.216.

Prelim. Exam. Hearing Tr. (July 26, 2013), ECF No. 8-2, PageID.112–16. Petitioner ordered Justice out of the vehicle at gunpoint. ECF No. 8-7, PageID.278 Petitioner and his accomplice then took the Lincoln MKX and Justice's belongings, including "two cell phones, two purses, a baby car seat and other sundries." *Id.* At the preliminary examination hearing, Justice admitted that he persuaded a friend, Brittani Davis, to lie about being the carjacking victim because he did not have a driver's license and should not have been driving the rental car. ECF No. 8-2, PageID.121–23.

Within 20 to 30 minutes of stealing the Lincoln MKX, Petitioner approached Laquanda Bradley, a woman stopped in front of a party store in a Jeep Patriot waiting for a friend to finish an errand. ECF No. 8-7, PageID.278–79. Petitioner and other unnamed individuals ordered Bradley out of the car at gunpoint. *Id.* at PageID.279. Petitioner and his accomplices took the Jeep Patriot, as well as Bradley's "jewelry, a cell phone, purse and sundries." *Id.*

William Carter and Maurice Pettigrew, Detroit Police Officers wearing modified police uniforms in an unmarked vehicle, observed the Jeep Patriot speeding out of the parking area of the party store. *Id.* The officers also saw a Lincoln MKX and a sedan pulling out of the same area at a high rate of speed directly behind the Jeep Patriot. *Id.* Suspecting that a robbery of the party store had taken place, the officers began following the vehicles. *Id.*

The three vehicles soon stopped to gather in a vacant lot, as the officers stayed back to surveil. *Id.* at PageID.279–80; ECF No. 8-2, PageID.211. Pettigrew and Carter testified that from their vantage point, they saw seven or eight Black men exit the three vehicles. ECF No. 8-2, PageID.187–88, PageID.211. Both officers recalled hearing one man who had walked closer to the unmarked police car say, "who the f– is that?" in reference to the officers. *Id.*

The officers observed Petitioner and the other men unloading belongings from the Jeep Patriot into the Lincoln MKX. *Id.* at PageID.188; ECF No. 8-7, PageID.280. The officers then saw the men get back into the Lincoln MKX and the sedan, while leaving the Jeep Patriot running and abandoning it as they drove away in the other two cars. ECF No. 8-2, PageID.189. After confirming that no one remained in the Jeep Patriot, the officers pursued the Lincoln MKX and the sedan. *Id.* at PageID.191.

When the officers reached an alley approaching the block where the two cars had driven, Petitioner and others began shooting at the officers in the unmarked car. *Id.* at PageID.192; ECF No. 8-7, PageID.280. Petitioner was specifically armed with the pistol that had been used to carjack Justice and Bradley. ECF No. 8-7, PageID.280. The officers exchanged numerous rounds with Petitioner and his accomplices, and Petitioner was shot by one of the officers. ECF No. 8-2, PageID.216–17. At a final conference hearing, the prosecutor proffered evidence that a

shoe left at the gun fight scene matched the shoe on Petitioner's foot when he went to the hospital for the gunshot wound, and the bullet recovered from Petitioner's body matched the officers' guns. Final Conf. Hearing Tr. (Sept. 27, 2013), ECF No. 8-5, PageID.239. The prosecutor also explained that Carter was able to identify Petitioner as one of the individuals who had fired at him and Pettigrew during the gun fight. *Id.*

After hearing a recitation of the factual basis for the plea, being informed of the consequences of the plea, and responding to questioning on the voluntary and intelligent nature of the plea by the trial court, Petitioner affirmed that he wished for the court to accept his plea. ECF No. 8-7, PageID.282. Petitioner's plea also involved a *Cobbs* agreement providing that Petitioner's sentences would run concurrently—except for the felony firearm sentence, which would run consecutively to all other sentences as required by state law. *See People v. Cobbs*, 505 N.W.2d 208 (1993). Prior to the plea colloquy, the trial court explained to Petitioner that it would not "negotiate" with him for a lower sentence under the *Cobbs* agreement. ECF No. 8-7, PageID.265. The trial court emphasized that if Petitioner was "not prepared to accept" the agreement, a trial would commence the very next Monday. *Id.* at PageID.265–66.

At sentencing, Petitioner sought to withdraw his nolo contendere plea, claiming that he was coerced by his attorney to enter the plea and was innocent of the crimes. ECF No. 1, PageID.17. The trial court denied Petitioner's motion to withdraw his plea. *Id.* The trial court then

5

sentenced Petitioner to 18 to 30 years for the assault with intent to murder, armed robbery, and carjacking convictions; 1 to 5 years for the carrying a weapon with unlawful intent conviction; and 1 to 2 years for the resisting and obstructing conviction, to be served concurrently. *Id.* Petitioner was also sentenced to 2 years for the felony-firearm conviction, to be served consecutively with the other convictions. *Id.*

Following his conviction and sentence, Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, which was denied for lack of merit on the grounds presented. *People v. Adams*, No. 323171 (Mich. Ct. App. Oct. 3, 2014).

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, which was also denied. *People v. Adams*, 861 N.W.2d 40 (Mich. 2015) (unpublished table decision).

On May 11, 2015, Petitioner filed a petition for writ of habeas corpus in this Court. ECF No. 1. He later moved to hold the case in abeyance while he exhausted additional claims for relief in state court. ECF No. 10. The Court granted the motion. ECF No. 11.

Petitioner filed a motion for relief from judgment in the trial court claiming that there was a breakdown in the attorney-client relationship, counsel was ineffective for failing to prevent his conviction based on false testimony, and he is actually innocent. The trial court denied the motion. ECF No. 21-3. The Michigan Court of Appeals denied Petitioner's application for leave to appeal because Petitioner "failed to establish that

6

the trial court erred in denying the motion for relief from judgment." ECF No. 21-4, PageID.547. The Michigan Supreme Court also denied leave to appeal. *People v. Adams*, 924 N.W.2d 548 (Mich. 2019) (unpublished table decision).

After exhausting these claims in state court, Petitioner returned to this Court on June 11, 2019. ECF No. 12. On March 10, 2020, the Court granted Petitioner's motion to lift the stay. ECF No. 15. In his amended petition (ECF No. 13), Petitioner raises five grounds for relief under 28 U.S.C. § 2254(d)(1)–(2):

(1) The trial court's refusal to allow Petitioner to withdraw his nolo contendere plea before sentencing despite his claim of actual innocence;

(2) Defense trial counsel improperly coerced Petitioner into entering the nolo contendere plea;

(3) Ineffective assistance of counsel based on defense trial counsel's failure to object to prejudicial preliminary examination testimony elicited to bind Petitioner over from Michigan's 36th District Court to Wayne County Circuit Court;

(4) Ineffective assistance of counsel based on defense trial counsel's failure to investigate, prepare, and present an effective jury trial defense; and

(5) Ineffective assistance of counsel based on defense appellate counsel failure to raise the constitutional violations alleged in the present petition.

ECF No. 13, PageID.389–90.

## II.    LEGAL STANDARD

A habeas petition filed under 28 U.S.C. § 2254 is subject to the heightened standard of review set forth in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). To obtain relief, habeas petitioners challenging "a matter 'adjudicated on the merits in State court' [must] show that the relevant state-court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)). The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). In other words, "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Furthermore, a state court's factual determinations are

presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and the federal court's review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III.   DISCUSSION

### A. Whether Petitioner's Claims Are Procedurally Defaulted

Respondent argues that three grounds for relief from the habeas petition are procedurally defaulted. ECF No. 20, PageID.439. Specifically, Respondent argues that the trial court's refusal to allow Petitioner to withdraw his nolo contendere plea despite his claim of actual innocence; ineffective assistance of counsel based on trial counsel's failure to object to prejudicial preliminary examination testimony; and ineffective assistance of appellate counsel cannot serve as grounds for habeas relief because Petitioner failed to raise them on direct review.

Procedural default doctrine generally prohibits federal courts from considering habeas claims "that the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). But a habeas petitioner can obtain federal court review of claims despite procedural default by showing that there was "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrat[ing] that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

9

As relevant here, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Furthermore, "attorney error is an objective external factor providing cause for excusing a procedural default," but "only if that error amounted to a deprivation of the constitutional right to counsel." *Davila*, 137 S. Ct. at 2065.

In denying Petitioner's motion from relief from the judgment, the trial court cited Michigan Court Rule 6.508(D)(3)(b), a procedural rule requiring courts to deny relief where the defendant alleges grounds for relief that "could have been raised on appeal from the conviction and sentence or in a prior motion," but fails to show "good cause" for not raising such claims and "actual prejudice" based on the alleged errors. ECF No. 21-3, PageID.545. Respondent is correct that the Sixth Circuit recognizes Michigan Court Rule 6.508(D)(3) as an "adequate and independent state court rule" for procedural default purposes. *See Amos v. Renico*, 683 F.3d 720, 727 (6th Cir. 2012). Here, the trial court clearly invoked Rule 6.508(D)(3)(b) as a state procedural bar to Petitioner's claims, making the claims Petitioner raised in his motion for relief from the judgment procedurally defaulted for federal review.

### 1. Whether Petitioner's Actual Innocence Claim Can Be Used to Avoid the Procedural Default Bar

Because actual innocence is not a "freestanding" claim for habeas relief, the Court construes Petitioner's innocence-based arguments as supporting his entitlement to federal review of his procedurally defaulted claims. *Herrera v. Collins*, 506 U.S. 390, 404–05 (1993); *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). To rely on actual innocence as an "extraordinary" measure for avoiding procedural default, Petitioner must support an actual innocence claim "with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Such evidence must be so compelling that Petitioner can "show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327.

Here, Petitioner relies on two main grounds to support his actual innocence. First, Petitioner claims "that a *res gestae* witness whose name is 'Pete' telephoned Petitioner to [come to] the pre-crime scene so that Petitioner could sell jewelry to the people at the scene." ECF No. 13, PageID.395. Presumably, "Pete's" testimony would have provided a legitimate, non-criminal justification for Petitioner's presence at the crime scene. But Petitioner has not presented any factual support for this theory. Petitioner does not provide an affidavit from "Pete" attesting that

he would have provided such testimony, nor any other corroboration that such evidence existed or would have shown his actual innocence.

Second, Petitioner argues that his actual innocence is supported by the admissions of two witnesses that they lied about who had been carjacked. ECF No. 21-3, PageID.543. But the trial court determined that Petitioner's contentions about how these lies implicated his actual innocence were without any factual basis. *Id.* Specifically, the witnesses lied about who was driving when the Lincoln MKX rental car was carjacked because one witness, Raymond Justice, did not have a driver's license and should not have been driving the rental car. ECF No. 8-2, PageID.121–23. But these witnesses neither implicated Petitioner in the carjacking nor otherwise lied to wrongfully convict Petitioner. *See id.* at PageID.149. Indeed, these witnesses could not identify the carjacking perpetrators and did not know of Petitioner at all, making it impossible for their lies to the police to have affected the validity of Petitioner's conviction.

Because Petitioner "is claiming actual innocence after having entered a no-contest plea, this Court considers 'any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy[.]'" *Connolly v. Howes*, 304 F. App'x 412, 418 (6th Cir. 2008) (alteration in original) (quoting *Bousley v. United States*, 523 U.S. 614, 624 (1998)). Therefore, as here where "the extent of the government's evidence is unclear from the record," the Court may assess

12

what evidence the government "could have offered" to support Petitioner's guilt. *Id.*

The factual basis for the plea supplied by the prosecutor demonstrates that the government could have proved that Petitioner committed the carjackings and shot at the officers with intent to kill. Officer Carter also testified that he could identify Petitioner as one of the men who shot at him and Officer Pettigrew. The bullet retrieved from Petitioner's body was shown to have been shot by the officers, and the shoe recovered at the gun fight scene matched the one Petitioner was wearing at the hospital when he was treated for the gunshot wound.

Therefore, while the government's success at trial would have depended on its use of circumstantial evidence and the credibility of witnesses, Petitioner has not demonstrated that no reasonable juror was likely to have found him guilty. *See Connolly*, 304 F. App'x at 419. Accordingly, actual innocence cannot be used as a basis to excuse Petitioner's procedural default.

## 2. Whether Ineffective Assistance of Appellate Counsel Excuses Petitioner's Procedural Default

Petitioner appears to raise ineffective assistance of both trial counsel and appellate counsel as freestanding habeas claims. But ineffective assistance of counsel may also "constitute[] cause to excuse his default" if Petitioner demonstrates that counsel's ineffectiveness "is an independent constitutional violation." *Coleman*, 501 U.S. at 755. Here,

even if Petitioner's claims are "procedurally defaulted pursuant to Rule 6.508(D)(3), his ineffective assistance of appellate counsel claim would, if proved, excuse the procedural default." *Henderson v. Palmer*, 730 F.3d 554, 563 (6th Cir. 2013).

To demonstrate that appellate counsel's ineffectiveness rose to the level of a constitutional violation, Petitioner must show that his appellate counsel's performance was objectively deficient and resulted in actual prejudice. *Roe v. Flores-Ortega*, 528 U.S. 470, 476–77 (2000).

In general, strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). In doing so, the Court stated:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the very goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* In short, "there can be no constitutional deficiency in appellate counsel's failure to raise meritless issues." *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999).

Petitioner argues that appellate counsel was ineffective by failing to raise the claims presented in his federal habeas petition. But

14

ultimately, as addressed above and elaborated upon below, all claims Petitioner argues his appellate attorney should have raised on appeal lack merit. Petitioner's appellate counsel, therefore, was not ineffective in failing to raise them. Accordingly, ineffective assistance of appellate counsel cannot be used as a basis to excuse his procedural default. The Court cannot consider Petitioner's entitlement to habeas relief on grounds related to the trial court's refusal to allow Petitioner to withdraw his nolo contendere plea despite his claim of actual innocence; ineffective assistance of counsel based on trial counsel's failure to object to prejudicial preliminary examination testimony; and ineffective assistance of appellate counsel.

### B. Whether Petitioner's Plea Was Involuntary Based on Ineffective Assistance of Trial Counsel

The remainder of Petitioner's claims concern the voluntariness of the plea and the performance of counsel. To be valid, a guilty plea must be "voluntarily and intelligently made by competent defendants with adequate advice of counsel." *Brady v. United States*, 397 U.S. 742, 758 (1970). To be voluntary and intelligent, the plea must be made "with sufficient awareness of the relevant circumstances and likely consequences." *Id*. at 748. The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Id*. at 749. A plea may still be considered voluntary and intelligent in a constitutional sense even if the defendant "did not correctly assess every

relevant factor entering into his decision." *Id.* at 755, 757. The Supreme Court has also explicitly held that a criminal defendant may constitutionally enter a guilty plea even while protesting his innocence or declining to admit his commission of the crime. *North Carolina v. Alford*, 400 U.S. 25, 37–38 (1970). A plea is not rendered involuntary simply because a defendant maintains his innocence. *Id.*

Ineffective assistance of counsel may render a guilty plea involuntary. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To show that counsel was ineffective, Petitioner must establish that (1) counsel performed deficiently and (2) there is a reasonable probability that, absent counsel's error, he would not have pleaded guilty and would have proceeded to trial. *Hill*, 474 U.S. at 58–59 (applying two-part ineffective assistance of counsel test from *Strickland v. Washington*, 466 U.S. 668, 687 (1984) to plea cases). And in the context of review under § 2254, "[e]stablishing that a state court's application of *Strickland* was unreasonable" is exceptionally difficult because both *Strickland* and § 2254 require the Court to give high deference to the state court. *Harrington*, 562 U.S. at 105.

When determining whether prejudice exists, "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 137 S. Ct. 1958,

1967 (2017). In addition, a favorable plea agreement weighs against a finding of prejudice. *See, e.g.*, *Plumaj v. Booker*, 629 F. App'x 662, 667–68 (6th Cir. 2015) (noting that a court may consider the relative benefits of a plea agreement when assessing counsel's performance).

As to the claims that are not procedurally defaulted, Petitioner maintains that his trial counsel was ineffective in two ways. First, Petitioner claims counsel coerced him into entering a plea by informing him that he would be convicted if he went to trial and would face over 40 years in prison. ECF No. 13, PageID.410. Second, Petitioner contends that counsel failed to investigate a possible actual innocence defense. *Id.* at PageID.410–11.

In denying Petitioner's motion for relief from the judgment, the trial court concluded that Petitioner's claims that his plea was involuntary or that counsel was ineffective were meritless. ECF No. 21-3, PageID.542–44. Petitioner fails to show that the state court's decision was contrary to, or an unreasonable application of, Supreme Court precedent.

### 1. Whether Trial Counsel Coerced Petitioner to Plead No Contest

First, there is no evidence that counsel misled Petitioner as to potential consequences, strong-armed Petitioner, or used coercive tactics to convince him to enter a plea. While Petitioner made written complaints about his relationship with trial counsel and counsel's performance prior to entering the plea, ECF No. 21-5, PageID.725–31, the trial court

17

explicitly asked whether Petitioner was threatened or coerced into taking the plea and emphasized that "if your pleas are a result of any undisclosed promises or threats you must disclose those to me now." ECF No. 8-7, PageID.276–77. Petitioner affirmed that no threats or promises were made to induce him to plead, and he understood that his failure to raise any concerns would result in waiver by pleading. *Id.* Moreover, after hearing the preliminary examination testimony and the prosecutor's summary of the factual basis for the plea, Petitioner agreed that the trial court should still accept his no contest plea. *Id.* at PageID.282.

The Court cannot rely on Petitioner's subjective and unsubstantiated statements about his counsel's improper coercion, as doing so "would be rendering the plea colloquy process meaningless." *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999); *see also Carter v. Winn*, No. 19- 11041, 2020 WL 5064217, at *6 (E.D. Mich. Aug. 26, 2020) ("If Petitioner felt pressured by [counsel's] statements to enter his guilty plea, he was required to say so on the record during the plea hearing when asked. Petitioner's indication on the record that he was entering his plea of his own free will forecloses these types of claims.").

Relatedly, counsel's reasoned assessment of the strength of the prosecutor's case and the potential sentence did not render the plea coerced. At the plea hearing, Petitioner's counsel stated that he felt that the trial court needed to explain to Petitioner "the ramifications of conviction" because Petitioner expressed "disappointment" in counsel's

inability to negotiate a lower sentence under the *Cobbs* agreement. ECF No. 8-7, PageID.261–65. In line with what Petitioner's counsel previously told him, the trial court advised Petitioner during the plea hearing that if he proceeded to trial and was found guilty, he could face a minimum sentence of up to 48 years. ECF No. 8-7, PageID.263–64. The trial court also confirmed that it would not "negotiate" with Petitioner for a lower sentence, and noted that if Petitioner was "not prepared to accept it, then we have a trial scheduled for this coming Monday." *Id.* at PageID.265–66.

Petitioner has failed to present evidence that counsel's assessment of the likelihood of a conviction was unreasonable or that counsel misled him about the possibility of a 48-year sentence if he was found guilty after a trial. Petitioner was also fully aware that rejecting the plea and proceeding to trial in a matter of days was a viable option. But after comprehensively reviewing his waiver of rights with the trial court and affirming that he was pleading without coercion, Petitioner voluntarily and intelligently waived his right to trial. Petitioner's ineffective assistance of trial counsel claim based on counsel's purported coercion is without merit.

### 2. Whether Trial Counsel Failed to Diligently Investigate

Regarding Petitioner's claim of ineffective assistance based on his attorney's failure to investigate his innocence, there is a presumption that counsel rendered effective assistance while investigating his case

that Petitioner must overcome. *Strickland*, 466 U.S. at 691 (explaining that "a heavy measure of deference to counsel's judgments" applies to failure to investigate claims). In general, "the duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005).

Petitioner fails to identify any particular investigations counsel should have undertaken or what evidence such investigations would have yielded. As previously discussed, Petitioner points to no specific evidence counsel could have uncovered that would have established Petitioner's innocence or thrown substantial doubt on the government's case such that Petitioner would have elected to proceed to trial rather than enter a guilty plea. In fact, there is no evidence that Petitioner's trial counsel even had information from Petitioner about "Pete," the witness Petitioner alleges had exculpatory evidence, or if so, what trial counsel did with that information. "Absent such evidence, *Strickland*'s deferential standard and AEDPA's doubly deferential standard require a finding that counsel's performance was not deficient." *Fitchett v. Perry*, 644 F. App'x 485, 489 (6th Cir. 2016). Without adequately substantiating his ineffective assistance of counsel claim based on failure to investigate, Petitioner cannot demonstrate that his trial counsel was ineffective. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (explaining that

conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief).

## C. Whether Petitioner's Appellate Counsel Was Ineffective

While the Court has assessed Petitioner's ineffective assistance of appellate counsel claim as a potential ground for avoiding procedural default, "[t]he procedural-default rule stated by Rule 6.508(D)(3) applies only to claims that could have been brought on direct appeal, and thus by necessity it does not apply to claims of ineffective assistance of *appellate* counsel." *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). Accordingly, Petitioner's ineffective assistance of appellate counsel claim may also be brought as a standalone habeas claim.

Setting aside Respondent's contention that Petitioner failed to properly raise and obtain state court review on this claim, for the reasons discussed above, Petitioner's ineffective assistance of appellate counsel claim is ultimately meritless. Therefore, Petitioner is not entitled to habeas relief on such grounds.

## IV.   CONCLUSION

The Court concludes that Petitioner is not entitled to federal habeas relief. Accordingly, the petition for a writ of habeas corpus is **DENIED** and **DISMISSED with prejudice**.

Before Petitioner may appeal, a certificate of appealability ("COA") must issue. 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A COA may issue only if a petitioner makes "a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court concludes that jurists of reason would not find the Court's disposition of the petition debatable. Accordingly, the Court **DENIES** issuance of a certificate of appealability.

Lastly, although the Court denies issuance of a COA, the Court concludes that an appeal from this decision may be taken in good faith. *See Foster v. Ludwick*, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002). Accordingly, the Court **GRANTS** Petitioner leave to proceed in forma pauperis on appeal. *See* Fed. R. App. P. 24(a).

**IT IS SO ORDERED.**


Dated: March 14, 2023          s/Terrence G. Berg
                               TERRENCE G. BERG
                               UNITED STATES DISTRICT JUDGE